EXHIBIT 1

**AFFIDAVIT**

I, John Keith Holleran, upon oath, do depose and state:

1. I am a Senior Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE).

2. I make this affidavit in support of the issuance of a criminal complaint against Edward PEREZ, a/k/a Edwin, charging him with conspiracy to possess with intent to distribute five hundred grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B) and 846.

3. The information contained in this affidavit comes from my own participation in the investigation of PEREZ and from other ICE special agents and/or law enforcement officers who have been involved in this investigation.

4. On December 27, 2007, the U.S. Customs and Border Protection (CBP) Office located at the Federal Express consignment hub in Memphis, Tennessee were conducting pre-arrival manifest reviews of shipments imminently scheduled to arrive in the United States from foreign locations. CBP Officer Clark, while conducting the reviews, selected a shipment manifested on airway bill (AWB) number 6753 3876 1707 for a Customs Border examination. The shipment was described as a "radio control car."

5. On December 28, 2007, at approximately 2:30 A.M., the package (AWB 6753 3876 1707) arrived in the CBP slide exam area. CBP Officer C. Worley placed the package in the x-ray machine and observed an anomaly on the screen indicating another unknown object was present within the package. CBP Officer C. Worley opened the package and removed a remote control car. The remote control car was opened and located in the area in where the anomaly was observed was a carbon paper bundle. The

bundle was cut open producing a white powdery substance. CBP Officer C. Worley conducted a field-test of the substance using narcopouch odv #904B. The narcopouch test indicated that the white powdery substance's chemical properties were consistent with that of cocaine. The alleged cocaine was weighed at approximately 1.15 kilograms and seized by CBP on Form 6051S # 3480207 and sealed in evidence bag # CS0253914. CBP Officers notified ICE Memphis Special Agent (SA) Parker who requested that the shipment be held intact for an attempt at a controlled delivery.

6. On December 28, 2007, at approximately 10:00 a.m., ICE Memphis SA Ryan Hubbard contacted ICE Special Agent Joseph Sullivan in order to relay the aforementioned cocaine seizure. SA Hubbard informed SA Sullivan that he would send the seized package via Federal Express with new wrapping.

7. On December 29, 2007, the package arrived at the Providence ICE office by way of a controlled Federal Express delivery, at which time ICE agents secured the package inside of the ICE secure evidence room.

8. On December 31, 2007, I removed the package from the ICE secure evidence room. I then removed the entire quantity of cocaine from the box and replaced it with a representative sample of that cocaine. I then placed the representative cocaine sample back into the remote car and then secured it inside of the original shipping package.

9. The package, AWB 6753 3876 1707 was addressed to a female subject at 1603 Plainfield Pike F6, Johnston, Rhode Island 02919 (the 1603 PLAINFIELD PIKE F6, JOHNSTON, RHODE ISLAND). The package had been sent from Christian Pena, CCSANTAFE NIVELC3 LOCAL68 AV. JOSE MARIA, CARACAS, VENEZUELA 1080, on December 27, 2007, with an anticipated arrival date at the 1603 Plainfield Pike

F6, Johnston, Rhode Island of December 31, 2007. According to the shipping instructions the sender did not request the delivery person obtain a signature from the recipient when the package was delivered.

10. On December 31, 2007, an undercover officer (UC) posed as a Federal Express delivery person in an effort to deliver the cocaine parcel to the address listed on the airway bill (1603 Plainfield Pike F6, Johnston, Rhode Island). At approximately 2:35 p.m. the UC knocked on the door of the 1603 Plainfield Pike F6, Johnston, Rhode Island, (the doorbell was not functioning) and made contact with the occupants. A female subject answered the door and stated she was not expecting a package. The UC then provided the female subject with the name of the person to whom the package was addressed. At that time a second female exited the residence, identified herself as the addressee and asked if the package was from the Dominican Republic. This second female subject stated to the UC that she was expecting the package and that it was for her friend, "Edwin." The second female subject signed for the package and with the assistance of the UC, took it inside unit F6. The UC then departed from the residence.

11. At approximately 3:03 p.m., agents observed a red BMW, license plate 784-158, registered to Edward Perez, 22 Arch Street, Providence, Rhode Island, pull up to building F in front of the garage for unit F7. A male subject, later identified as Edward PEREZ, a.k.a. 'Edwin', (DOB 06/06/1983) quickly exited the vehicle and proceeded up the stairs to Unit F6, leaving the car running and the driver side door open. PEREZ knocked on the door and was allowed access to the residence. Approximately one minute later, PEREZ exited unit F6 carrying the controlled package and began to go down the stairs, at which time he was confronted by police and placed under arrest.

12. While agents were conducting the protective sweep of the address, PEREZ, handcuffed and on his knees, was able to reach one of his three communication devices, a Nextel Cellular telephone and make a telephone call. Johnston Police Department (JPD) Detectives James Brady and Anthony Sasso heard PEREZ say "The cops are here, the cops are here!" prior to their removing the device from PEREZ's hand.

13. At the time PEREZ was placed under arrest, he was also in possession of a T-Mobile 'Sidekick'-telephone and an iPhone. These items were seized by law enforcement officers and placed into evidence.

14. After SA Joseph Sullivan advised PEREZ of his Miranda rights, ICE SA Brendan Hickey questioned PEREZ about the package and its contents. PEREZ insisted he did not know anything about the cocaine, and that he was merely picking up a remote controlled vehicle sent from his godmother in Venezuela, as a gift for his son. PEREZ stated he had no idea about the presence of any drugs. However, as the conversation between PEREZ and SA Hickey progressed, PEREZ ultimately admitted that his BMW was purchased for him by his godmother for the purpose of allowing him to "make deliveries" for her. PEREZ also said that he was not involved enough with the delivery of the cocaine to have knowledge about who the cocaine was ultimately supposed to be delivered to. PEREZ repeatedly asked SA Hickey what information he could provide in order to assist himself. However when presented with specific questions as to other parties involved in the smuggling of the cocaine, PEREZ responded "I can't tell you any more". PEREZ again acknowledged that he had previously picked up and delivered packages, but would not give any specifics about the content, final destination or other relevant issues involved in his prior deliveries.

15. JPD Canine Officer James Amodei and his narcotics dog 'Cargo' subsequently examined the PEREZ vehicle. Cargo made positive alerts to the center console and passenger glove box of the BMW, however, no contraband was discovered.

16. PEREZ was transported to Rhode Island State Police barracks for processing and his vehicle was seized and transported to the Johnston Police Department. On January 2, 2008, PEREZ was arraigned in Rhode Island state court and charged with violations of Rhode Island's narcotics laws. PEREZ was held without bail pending further proceedings.

17. During an interview with law enforcement officers on December 31, 2007, the female subject to whom the Federal Express package was addressed stated that PEREZ had informed her on December 25, 2007 that his godmother was sending him a gift from a foreign country. PEREZ then asked the female subject for her address so that the package could be delivered to the female subject's residence. Consistent with instructions provided to the female subject by PEREZ, she notified PEREZ of the Federal Express package's arrival on December 31, 2007 by way of his cellular telephone. The female subject identified PEREZ' cellular telephone number as 401-354-9184, which is an AT&T wireless account listed in her name. She further stated that PEREZ also uses a Nextel cellular telephone (401-569-1494).

18. I am aware of the fact that AT&T is the only wireless company in the United States that sells and provides service for the iPhone. On January 4, 2008 SA Joseph Sullivan attempted to call cellular telephone number 401-354-9184 and received a message informing me that the telephone was not accepting calls at this time. SA

Sullivan had previously dialed cellular telephone number 401-569-1494 and noted that the Nextel cellular telephone seized from PEREZ immediately began to ring.

John Keith Holleran
Special Agent
U.S. Immigration & Customs Enforcement

Subscribed and sworn to before
Me this 16th day of January, 2008,
In Providence, Rhode Island

DAVID L. MARTIN
United States Magistrate Judge