EXHIBIT 5

AFFIDAVIT IN SUPPORT OF AN ANTICIPATORY SEARCH WARRANT

I, Joseph A. Sullivan, having been duly sworn, hereby depose and state as follows:

INTRODUCTION

1. I am a Special Agent ("SA") of the U.S. Immigration and Customs Enforcement ("ICE"), and have been so since February 2003. As such, I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7); that is, an officer of the United States empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I am currently assigned to the ICE office in Providence, Rhode Island and have been so since May 2007. From February 2003 to May 2007, I was assigned to the ICE office in Los Angeles, California.

2. As an ICE agent, I have participated in numerous narcotic, commercial fraud and alien smuggling investigations and the financial investigations involving the laundering of proceeds from the sale of illegal narcotics, commercial fraud, human smuggling, and other illegal activities. In the course of my duties, I have participated in investigations involving wire and electronic communications interception. I have also applied for and executed numerous arrest, search and seizure warrants in cases involving narcotics, money laundering, extortion and alien smuggling offenses. I am familiar with the methods and practices used by persons involved in smuggling illegal controlled substances, transporting and smuggling aliens, and conducting money laundering activities. I am familiar with means and methods of how narcotics are smuggled into the United States, sold, and used in the framework of a criminal enterprise. I know that narcotics traffickers utilize electronic communications to facilitate their illegal activities.

3. I am a graduate of the Federal Law Enforcement Training Center's Basic

Criminal Investigator School, the Customs Basic Enforcement School for Criminal Investigators, the Customs Inspector Academy, Advanced Commercial Fraud School and Money Laundering & Asset Forfeiture for Task Force Officers.

4. Prior to working with ICE, I was employed as a U.S. Customs Inspector for the United States Customs Service (presently known as U.S. Customs and Border Protection) for approximately three years. As a Customs Inspector I searched persons, vehicles, ocean vessels, commercial and private aircraft and shipped merchandise arriving from foreign countries for narcotics and other contraband.

5. I make this affidavit based on personal knowledge obtained from my participation in this investigation, as well as information from the following sources: Oral and written reports received from federal agents and state and local law enforcement agencies; physical surveillance conducted by federal agents and local law enforcement officers, which have been reported to me either directly or indirectly; financial and public records; and confidential informants and sources of information.

6. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer who either has direct or hearsay knowledge of the statement. Because this affidavit is being submitted for the limited purposes of obtaining an anticipatory search warrant, I have not set forth all facts known during the course of this investigation. Facts not set forth herein are not relied upon in reaching my conclusion that search warrants should be issued.

**PURPOSE OF AFFIDAVIT**

7. This affidavit is submitted in support of an anticipatory search warrant for 1603 Plainfield Pike F-6, Johnston, Rhode Island 02919 (the TARGET ADDRESS).

**PROBABLE CAUSE**

8. On December 27, 2007, the U.S. Customs and Border Protection (CBP) Office located at the Federal Express consignment hub in Memphis, Tennessee were conducting pre-arrival manifest reviews of shipments imminently scheduled to arrive in the United States from foreign locations. CBP Officer Clark, while conducting the reviews, selected a shipment manifested on airway bill (AWB) number 6753 3876 1707 for a Customs Border examination. The shipment was described as a "radio control car."

9. On December 28, 2007, at approximately 2:30 A.M., the package (AWB 6753 3876 1707) arrived in the CBP slide exam area. CBP Officer C. Worley placed the package in the x-ray machine an observed an anomaly on the screen indicating another unknown object was present within the package. CBP Officer C. Worley opened the package and removed a remote control car. The remote control car was opened and located in the area in where the anomaly was observed was a carbon paper bundle. The bundle was cut open producing a white powdery substance. CBP Officer C. Worley field-tested the substance using narcopouch odv #904B. The narcopouch test indicated the white powdery substance's chemical properties were consistent with that of cocaine. The alleged cocaine was weighed at approximately 1.15 kilograms and seized by CBP on Form 6051S # 3480207 and sealed in evidence bag # CS0253914. CBP Officers notified ICE Memphis Special Agent (SA) Parker who requested that the shipment be held intact for an attempt at a controlled delivery.

10. On December 28, 2007, at approximately 10:00, ICE Memphis SA Ryan Hubbard contacted me in order to relay the aforementioned cocaine seizure. SA Hubbard informed me that he would send the package to me via FEDEX in a sealed package. On

December 29, 2007, the package arrived at the Providence ICE office by way of a controlled Federal Express delivery. ICE agents removed the cocaine from the box and replaced it with a representative sample of cocaine. The sample of cocaine was then placed back into the remote car, which was then secured inside of the original shipping package.

11. The package, AWB 6753 3876 1707 was addressed to Charlotte NEHME, 1603 Plainfield Pike F6, Johnston, Rhode Island 02919 (the TARGET ADDRESS). The package had been sent from Christian Pena, CCSANTAFE NIVELC3 LOCAL68 AV. JOSE MARIA, CARACAS, VENEZUELA 1080, on December 27, 2007, with an anticipated arrival date at the TARGET ADDRESS of December 31, 2007. According to representatives of Federal Express, the sender did not request that the Federal Express delivery person obtain a signature from the recipient when the package is delivered.

12. I traveled to the TARGET ADDRESS and discovered that it is part of a large, multi-building condominium complex comprised of townhomes advertised by a street-side sign as the "Plainfield Valley Condominiums." There are approximately nine buildings with an average of 9 units per building. Each unit has its own front door facing the access road. Each unit's main door is on the second level with the first level having a garage. While each building in the complex is not identical, they maintain the same color scheme of beige with light gray doors and light blue shutters. Building 'F' is located in the rear north west corner of the complex with all the unit entrances facing south. The ground level of Building F maintains single car garages below each unit with two residential floors above the ground level garages of all units. The entrance to Unit 1 of Building F is alone on the left side of the building (when facing north looking at the front

entrances). Units 2 & 3 share a stair case which leads to the separate front doors for each unit, as do units 4 & 5, units 6 & 7 and units 8 & 9, respectively. Unit 6 of Building F is further identified by a black number "6" affixed to a gold decal, approximately 3" by 5" and is located to the left of the door, approximately five feet above the threshold.

13. A review of the Accurint public database revealed that Ann Marie Scungio, also known as Anne Marie NEHME resides at the TARGET ADDRESS. Also listed by public records at that same address is Charlotte NEHME.

14. A verification of the delivery address with the U.S. Postal Service listed the TARGET ADDRESS (described as Apt F6) as a true delivery address. The Postal Service records list Ann Marie NEHME, Charlotte NEHME and John Centracchio as individuals receiving mail at the TARGET ADDRESS within the last year.

15. A check with the Johnston Police Department revealed that Johnston police officers responded to the TARGET ADDRESS in 2004 for a report of a domestic dispute. During the subsequent investigation of this report, police identified the primary resident of the TARGET ADDRESS as Ann Marie NEHME. They further identified Ann Mari NEHME's daughter, Charlotte NEHME (DOB 01/22/1987), as being present at the TARGET ADDRESS at the time of the police response. Charlotte NEHME may also reside at 67 Stone Drive, Cranston, Rhode Island, which is the address listed on her Rhode Island driver's license. That second residence is located less than one-half mile from the TARGET ADDRESS.

16. It is the intention of Special Agents of ICE to make a controlled delivery of the above-described package (AWB 6753 3876 1707) and its contents to the TARGET ADDRESS on December 31, 2007 under the guise of a normal Federal Express package

delivery. An undercover agent will pose as Federal Express employee for purposes of delivering the package to the TARGET ADDRESS, maintaining control of the parcel until it is delivered to the TARGET ADDRESS and accepted by the occupant/receipient. Upon delivery of the package, law enforcement agents will wait until the receiving party returns inside of the TARGET ADDRESS before executing the requested search warrant.

17. I have written affidavits for search and seizure warrants, executed, or assisted in the execution of numerous federal and or state search warrants for various controlled substances, as well as the records, books, documents, and proceeds derived from the trafficking in controlled substances. I have received extensive training in the means and methods used by persons in the drug trafficking business.

18. I have been involved in numerous seizures of controlled substances including marijuana, heroin, ecstasy and cocaine. I have been involved in numerous searches of dwellings and buildings out of which controlled substances have been sold or stored, and in which drug traffickers have resided.

19. Based upon my training and experience, I have learned of, observed, or seized papers showing dates, names and amounts, which papers I believe to be drug ledgers; papers and photographs showing residency or occupancy of said premises; United States currency, which I believe to be the proceeds of drug trafficking; firearms; controlled substances; and keys for safety deposit boxes where the proceeds of drug trafficking could be stored.

20. I know from my training and experience, that drug traffickers, more often than not, keep controlled substances, as well as records containing names, addresses, and amounts of money owed both to and by the drug seller in their homes and in other

premises used by them. These records are necessary to further the business of selling controlled substances. Furthermore, I know from my training and experience that occupants of these premises keep on those premises, more often than not, documents and records such as telephone bills, mortgage or rental receipts, mail, photographs, and bank records indicating both the occupancy and ownership of those premises. I further note based upon my training and experience that drug dealers often keep proceeds of their drug sales either in their homes and premises used by them or in the safety deposit boxes. They do this to avoid forfeiture of said monies placed in bank accounts and to avoid detection of said proceeds by the Internal Revenue Service (IRS).

21. I further know from my training and experience that drug traffickers:

a) Often place their assets in names other than their own in order to avoid detection and forfeiture of those assets by law enforcement.

b) Continue to use the assets referred to in subparagraph (a) above and to exercise dominion and control over those assets;

c) Readily maintain large sums of cash to run and finance their drug trafficking activities;

d) Attempt to legitimize the financial profits made from drug trafficking, and that in order to accomplish this, they utilize domestic and foreign banks, their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts;

e) Usually maintain paraphernalia for the storing, weighing and distributing of controlled substances, including paraphernalia such as, but not limited to, scales, drawings, and charts.

22. I know from my training and experience that persons who traffic in controlled substances normally maintain the items and records described above for long periods of time regardless of whether their value to the drug dealer has diminished. Often, this type of evidence is generated, maintained, and then forgotten about. Thus, documents that one would think a prudent person would destroy because of their incriminatory nature are still possessed months or even years after the documents came into the possession of the drug dealer. Often these individuals do not even realize the incriminatory nature of the documents they keep. I have participated in or know of the execution of search warrants where documentary drug trafficking evidence dating back many months, and even years, has been found.

## CONCLUSION

23. Based upon the above, I submit that there is probable cause to believe that the TARGET ADDRESS contains controlled substances; Federal Express packaging documents; records of controlled substance transactions; packaging materials described above; records containing names, addresses, and telephone numbers of purchasers and suppliers of controlled substances; records and photographs indicating ownership, occupancy, and control of said premises; proceeds, such as U.S. Currency, derived from controlled substance transactions; financial records relating to drug trafficking or the proceeds of drug trafficking; and, safety deposit box keys, in violation of Title 21, United States Code, Sections 841(a)(1), 846, 952, and 963.

Joseph A. Sullivan
Special Agent
U.S. Immigration & Customs Enforcement

Subscribed and sworn to before
Me this 3/31 day of December, 2007,
In Providence, Rhode Island

DAVID L. MARTIN
United States Magistrate Judge