IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA )
)
vs. ) CR. No. 08-010S
)
EDWARD PEREZ )

# GOVERNMENT'S TRIAL MEMORANDUM

## I. DEFENDANT

The defendant, Edward "Edwin" Perez, is charged with one count of Conspiracy to Distribute 500 Grams or More of Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846.[1]

Perez has a minor arrest and conviction record for driving on a suspended license offenses, disorderly conduct and resisting arrest.

## II. FACTS

This case began when Officer Clark of the United States Customs and Border Protection ("CBP") Office located at the Federal Express ("FedEx") Consignment Hub in Memphis, Tennessee, selected a package for inspection, that was being shipped into the country by FedEx, bearing Airway Bill Number 675338761707,

[1] The Defendant understands that the Indictment incorrectly identifies the sentencing provision as 21 U.S.C. § 841(b)(1)(A) which applies to cases involving over 5 kilograms of cocaine and requires a 10 year minimum mandatory sentence. The proper reference is to 21 U.S.C. § 841(b)(1)(B) which applies to cases involving over 500 grams of cocaine, such as this one, and only requires mandatory minimum of 5 years.

from a point of origin in Venezuela. The package purportedly contained a "radio-controlled car" and was declared to be an "unsolicited gift." CPB Officer Worley intercepted that package. It was a fairly large package and the officer decided to subject it to an x-ray examination.

When he x-rayed the package, CBP Officer Worley observed an anomaly in the image. He opened the package, examined the toy car, and in the area that he had observed the anomaly in the x-ray image, he found a hidden object wrapped in carbon paper.

Further inspection of the contents of that concealed package revealed that it contained approximately one kilogram of cocaine (Exh. 1)[2]. The car and the secreted contraband were photographically documented (Exh. 2, 3, and 4). The Officers weighed the package containing the cocaine and obtained an approximate gross weight of the drug and its packaging of 1.15 kilograms.

A small amount of that cocaine was used by CBP Officer Worley to conduct a field test that proved positive for cocaine. The field test process was likewise documented photographically and on a form specific to that purpose (Exh. 5 and 6). The shipment was seized and controlled on CBP form 6051S #3480207 (Exh. 7). The evidence was sealed in evidence bags. The cocaine

---

[2]A final exhibit list will be produced prior to the start of trial. References to exhibits are what the final exhibit list is anticipated to be but is subject to modification.

was sealed in #CS0253914 (Exh. 8). Other components were also separately sealed in specifically numbered evidence bags. Due to its size, the remote controlled car was kept in its original box.

The contents of the package containing the radio-controlled car and the car itself were unique in appearance (Exh. 9 and 10). The Commercial Invoice associated with the shipment identified the shipment as originating from a company, Biznet, C.A, in Caracus, Venezuela. The invoice was signed in the name Maria Antonini (Exh. 11). The sender who delivered the package for shipment was identified as Mr. Cristhian Pena Vargas. At the time of shipment he completed a form for FedEx (Exh. 12) and was required to produce photographic identification. His *CEDULA DE IDENTIDAD* was photocopied (Exh. 13). The original package in which the car was shipped was likewise uniquely labeled, bearing a unique Airway Bill Number, was documented in a FedEx Manifest Report and was addressed to a named recipient, Charlotte Neheme at 1603 Plainfield Pike in Johnston, Rhode Island (Exh. 14 - 17).

The CBP officers notified the local Office of Immigration and Customs Enforcement (ICE) of their discovery. Special Agent Parker requested that the package be secured intact for possible follow-up investigation. Special Agent Ryan Hubbard took control of the evidence and decided to initiate an investigation by attempting a controlled delivery of the package to the address in Rhode Island.

Special Agent Hubbard in Memphis notified Special Agent Joseph Sullivan in Providence of the interception and their intent to ship the evidence to Providence in order to attempt a controlled delivery. Special Agent Sullivan agreed to undertake the investigation and assumed local responsibility for the case.

All of the evidence was repackaged. The original package and its contents including the cocaine, now separately and securely sealed in a numbered evidence bag, were placed inside of a new and uniquely labeled shipping container. That container was specially sealed to insure the integrity of the contents during shipment (Exh. 18). The package was handled in accordance with established protocol and was shipped via FedEx to Agent Sullivan who was waiting for it in Rhode Island. During shipment Agent Sullivan queried the FedEx database to determine if anyone other than he was tracking the package.

The package was delivered to Special Agent Sullivan on schedule, intact and sealed. The package and its contents matched the description, photographs, markings and numbering provided by the Memphis agents. Special Agents Sullivan and Keith Holloran logged the evidence in to their secure evidence room at their office in Providence.

In preparation for a controlled delivery of the package, Special Agent Holloran removed approximately 5 grams of the drug evidence from the original package then repackaged that small

sample with an inert material approximating a kilogram of cocaine in size and appearance.[3] The sham kilo was reinserted into the hiding place in the radio controlled car and the toy car was returned to its original packaging for delivery. Agent Sullivan notified the Johnston Police Department of the anticipated law enforcement action in their city as well as the Rhode Island State Police ("RISP"). Both agencies dispatched law enforcement officers to assist. Agent Sullivan also enlisted the assistance of FedEx security personnel to arrange for an undercover agent to dress as and pose as a FedEx delivery man utilizing FedEx signature forms.

Special Agent John Pasciucco posed as a FedEx delivery man. He took possession of the package from Agent Sullivan. While other agents and officers watched, he went to the entrance of unit F6 at the designated address. At about 2:35 on December 31, 2007 Agent Pasciucco knocked on the door and was greeted by a Ms. Ann Marie Scungio. Ms. Scungio said that she was not expecting a package. Agent Pasciucco told Ms. Scungio that the shipment was addressed to Charlotte Nehme. At that time Ms. Scungio's daughter, Charlotte Nehme, appeared and asked if the package was from the Dominican Republic. She took possession of the box saying that it was for her friend "Edwin."

---

[3] The sample was itself separately packaged and labeled in its own numbered evidence bag (Exh. 19).

Agent Sullivan and other members of the surveillance team watched the building. At approximately 3:03 p.m. they observed a red BMW bearing license plate 784-158 and registered to Edward Perez of 22 Arch St., Providence, Rhode Island park in the driveway to Unit F7. The driver and sole occupant of the car was later identified as the defendant, Edward "Edwin" Perez ("Perez"). Perez quickly left the car and bounded up the steps to Unit F6. In so doing he left the car running and the driver's door opened.

After approximately one minute inside of Unit F6 Perez reappeared carrying the intact package. He was confronted by agents and officers who placed him under arrest. Perez was handcuffed and told to kneel while a protective sweep of Unit F6 was conducted. While handcuffed and kneeling, Perez was able to reach one of three cellular telephones he had with him. Johnston Police Detectives James Brady and Anthony Sasso each saw Perez attempting to place a call and heard him exclaiming, "The cops are here. The Cops are here!" They removed the phone (Exh. 19) and two others from him.[4] Ms. Scungio signed a consent to search form for her home (Exh. 21). A search of the residence did not result in the seizure of any evidence.

---

[4]It is unclear whether Perez successfully dialed any number. Toll records for that telephone do not show any outgoing call at that time (Exh. 20).

Agent Sullivan provided Perez with his Miranda warnings verbally and in writing (Exh. 22). Special Agent Brian Hickey questioned Perez about the package and its contents. After initially denying any knowledge of the presence of cocaine in the box, Perez ultimately admitted that the BMW had been purchased by his "godmother" in Venezuela to "make deliveries" for her. He said that he was not involved enough in the cocaine deliveries to know the identity of the ultimate intended recipient. He asked what information he could provide in order to assist himself, but when pressed about he details of who he was bringing the package to, the number of prior deliveries he had made or how much cocaine was enclosed in prior shipments he responded, "I can't tell you anymore."

The approximately 5 gram sample of cocaine,[5] that was used by Agent Holloran to make up the sham kilo of cocaine for the controlled delivery and the remainder of the kilo of cocaine originally seized in Memphis, was turned over to RISP Detective Trooper John A'Vant for testing at the Rhode Island Department of Health Forensic Sciences Laboratory. Detective A'Vant followed RISP protocol for the transport and secure storage of the evidence. He maintained a chain of custody log (Exh. 23).

---

[5] The sample (Exh. 19) was maintained as a separately packaged and labeled item in its own evidence bag.

The drug evidence was logged into the laboratory and underwent forensic testing by Senior Forensic Scientist Paul Breault. There the drug evidence was also securely maintained and tracked in accordance with laboratory protocol. (Exh. 24) The sample and the balance of the drugs were individually tested. Both sources tested positive for Cocaine Salts, a schedule II controlled substance (Exh. 25).

All the cocaine and the original packaging were also weighed by Mr. Breault (Exh. 26). The cocaine sample used to make the sham kilo had a net weight of 5.18 grams. The balance of the cocaine seized in Memphis had a net weight of 984.51 grams. The original packaging weighed 160.42 grams. In total, as weighed at the Forensic Sciences Laboratory, on their scales, by Mr. Breault the cocaine and packaging had a combined gross weight of 1.14493 kilograms which compares favorably to the 1.15 approximate gross weight originally assigned by CBP Officer Worley to the seizure after weighing it on his scale, in the field office, at Memphis.

III. <u>JURY INSTRUCTIONS</u>

In addition to the general instructions of the Court the United States requests the following offense specific instructions to the jury.

CONSPIRACY

THE DEFENDANT IS ACCUSED OF CONSPIRING TO DISTRIBUTE 500 GRAMS OR MORE OF COCAINE. IT IS AGAINST FEDERAL LAW TO CONSPIRE WITH SOMEONE TO COMMIT THIS CRIME.

FOR YOU TO FIND THE DEFENDANT GUILTY OF CONSPIRACY, YOU MUST BE CONVINCED THAT THE GOVERNMENT HAS PROVEN EACH OF THE FOLLOWING THINGS BEYOND A REASONABLE DOUBT:

FIRST, THAT THE CONSPIRACY CHARGED IN THE INDICTMENT EXISTED BETWEEN AT LEAST TWO PEOPLE TO DISTRIBUTE 500 GRAMS OR MORE OF COCAINE, AND

SECOND, THAT THE DEFENDANT WILLFULLY JOINED IN THAT AGREEMENT.

A CONSPIRACY IS AN AGREEMENT, SPOKEN OR UNSPOKEN. THE CONSPIRACY DOES NOT HAVE TO BE A FORMAL AGREEMENT OR PLAN IN WHICH EVERYONE INVOLVED SAT DOWN TOGETHER AND WORKED OUT ALL THE DETAILS. BUT THE GOVERNMENT MUST PROVE BEYOND A REASONABLE DOUBT THAT THOSE WHO WERE INVOLVED SHARED A GENERAL UNDERSTANDING ABOUT THE CRIME. MERE SIMILARITY OF CONDUCT AMONG VARIOUS PEOPLE, OR THE FACT THAT THEY MAY HAVE ASSOCIATED WITH EACH OTHER OR DISCUSSED COMMON AIMS AND INTERESTS DOES NOT NECESSARILY ESTABLISH PROOF OF THE EXISTENCE OF A CONSPIRACY, BUT YOU MAY CONSIDER SUCH FACTORS.

TO ACT “WILLFULLY” MEANS TO ACT VOLUNTARILY AND INTELLIGENTLY AND WITH THE SPECIFIC INTENT THAT THE UNDERLYING CRIME BE COMMITTED — THAT IS TO SAY, WITH BAD PURPOSE, EITHER TO DISOBEY OR DISREGARD THE LAW — NOT TO ACT BY IGNORANCE, ACCIDENT OR MISTAKE. THE GOVERNMENT MUST PROVE TWO TYPES OF INTENT BEYOND A REASONABLE DOUBT BEFORE DEFENDANT CAN BE SAID TO HAVE WILLFULLY JOINED THE CONSPIRACY: AN INTENT TO AGREE AND AN INTENT, WHETHER REASONABLE OR NOT, THAT THE UNDERLYING CRIME BE COMMITTED. MERE PRESENCE AT THE SCENE OF A CRIME IS NOT ALONE ENOUGH, BUT YOU MAY CONSIDER IT AMONG OTHER FACTORS. INTENT MAY BE INFERRED FROM THE SURROUNDING CIRCUMSTANCES.

PROOF THAT THE DEFENDANT WILLFULLY JOINED IN THE AGREEMENT MUST BE BASED UPON EVIDENCE OF HIS OWN WORDS AND/OR ACTIONS. YOU NEED NOT FIND THAT THE DEFENDANT AGREED SPECIFICALLY TO OR KNEW ABOUT ALL THE DETAILS OF THE CRIME, OR KNEW EVERY OTHER CO-CONSPIRATOR OR THAT HE PARTICIPATED IN EACH ACT OF THE AGREEMENT OR PLAYED A MAJOR ROLE, BUT THE GOVERNMENT MUST PROVE BEYOND A REASONABLE DOUBT THAT HE KNEW THE ESSENTIAL FEATURES AND GENERAL AIMS OF THE VENTURE.

EVEN IF DEFENDANT WAS NOT PART OF THE AGREEMENT AT THE VERY START, HE CAN BE FOUND GUILTY OF CONSPIRACY IF THE GOVERNMENT PROVES THAT HE WILLFULLY JOINED THE AGREEMENT LATER. ON THE OTHER HAND, A PERSON WHO HAS NO KNOWLEDGE OF A CONSPIRACY, BUT SIMPLY HAPPENS TO ACT IN A WAY THAT FURTHERS SOME OBJECT OR PURPOSE OF THE CONSPIRACY, DOES NOT THEREBY BECOME A CONSPIRATOR.

THE GOVERNMENT DOES NOT HAVE TO PROVE THAT THE CONSPIRACY SUCCEEDED OR WAS ACHIEVED. THE CRIME OF CONSPIRACY IS COMPLETE UPON THE AGREEMENT TO COMMIT THE UNDERLYING CRIME.

See Pattern Criminal Jury Instructions for the District Courts of the First Circuit, §§ 4.18.371 & 4.21.841(a)(1) Comment (2).

## CONSPIRACY - MINOR PART

A DEFENDANT MAY BE CONVICTED AS A CONSPIRATOR EVEN THOUGH HE MAY HAVE PLAYED ONLY A MINOR PART IN THE CONSPIRACY.

See Federal Jury Practice and Instructions, Fifth, O'Malley, Grenig & Lee, § 31.05.

## KNOWLEDGE OF THE CONTROLLED SUBSTANCE

THE GOVERNMENT MUST PROVE THAT THE OFFENSE INVOLVED A PARTICULAR TYPE AND QUANTITY OF DRUG, NOT THAT THE DEFENDANT KNEW THAT HE WAS DISTRIBUTING THE PARTICULAR DRUG TYPE AND QUANTITY CHARGED.

See United States v. Collazo-Aponte, 281 F.3d 320, 326 (1st Cir. 2002).

IV. <u>GOVERNMENT'S REQUESTED VOIR DIRE QUESTIONS</u>

In addition to the general voir dire of the Court, the United States of America requests the following case specific voir dire:

1. Has anyone ever been arrested or convicted of a crime, or ever had a family member or close friend who has been arrested or convicted of a crime?

2. Has anyone ever had a problem with drugs, or ever had a family member or close friend that has had a problem with drugs?

3. Is there anyone who does not believe the government should be able to regulate the sale and use of controlled substances?

V. <u>ANTICIPATED TRIAL ISSUES</u>

The only trial issue known to the United States is the assertion made by Perez in a premature and somewhat ill-conceived Motion to Suppress. The thrust of the argument in that motion was that Perez ***predicted*** that the Government could not establish a complete chain of custody ***at trial.*** On that basis, Perez wanted the Court to predetermine that the Government could not

properly authenticate the evidence ***at trial*** and asked the court to "suppress" the evidence ***pre-trial***.

The motion was dismissed on the pleadings as premature or moot but because Perez based that prognostication on his belief that the government will not be able to establish a sufficient chain of custody at trial it is anticipated that he will raise it again when the government seeks to admit the drug evidence as a full exhibit.

The United States maintains that the evidence outlined in the FACTS section of this memorandum will provide an adequate basis upon which the court can admit the drug evidence as a full exhibit. Starting with bedrock, to authenticate an item of evidence, the court need only be reasonably satisfied that the evidence is actually what the proponent purports it to be in order to admit it as a full exhibit. Breaks or anomalies in the chain of custody only go to the weight that the jury should afford the evidence, not admissibility. And, the Court may rely on a presumption of official regularity.

Chain of custody is only a real issue with fungible items of evidence, like drugs, but not to unique items of evidence like this particular radio controlled car and the package in which it was shipped. In this case, a fungible item of evidence (cocaine) was associated with a very unique package. The evidence was securely maintained and physically kept together throughout the

entire investigation. The drug evidence was only physically separated from the unique packaging it was hidden in when it was delivered to the laboratory for testing. All that evidence, drug and non-drug, was carefully sealed, uniquely marked and fully documented.

Perhaps because of this inherent weakness in the argument Perez threw in, for good measure, that the evidence has also been "tampered with." Although evidence tampering may render evidence inadmissable because it is not in substantially the same condition as when it was seized -- Perez only based that assertion on the facts that the drug evidence was "repackaged" (necessarily so), that the gross field weight is "significantly" different that the laboratory net weight (not accurate), and that the seizure date is incorrect in one box of one RISP report (a clerical error by an assisting agency).

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). The rule does not erect a particularly high hurdle. "If in the court's judgment it seems reasonably probable that the evidence is what it purports to be, the command of Rule 901(a) is satisfied, and the evidence's persuasive force is left to the jury." *United States v. Ladd,* 885 F.2d 954, 956 (1st Cir.1989); *accord United*

*States v. Mahecha-Onofre,* 936 F.2d 623, 625 (1st Cir.), *cert. denied,* 502 U.S. 1009, 112 S.Ct. 648, 116 L.Ed.2d 665 (1991). The Court of Appeals reviews a court's authentication rulings in a deferential manner, testing only for mistake of law or abuse of discretion. *Ladd,* 885 F.2d at 956; *United States v. Williams,* 809 F.2d 75, 89-90 (1st Cir.1986), *cert. denied,* 481 U.S. 1030, 107 S.Ct. 1959, 95 L.Ed.2d 531 (1987).

The First Circuit has refused to "paint the lily." The decision as to whether the evidence is satisfactorily authenticated is well within the realm of the trial court's discretion. *See Ladd,* 885 F.2d at 957; *see also United States v. Luna,* 585 F.2d 1, 6 (1st Cir.) (where the appellants "offered no evidence that the drugs had been altered[,] [t]he trial judge was thus entitled to rely on a presumption of official regularity" in the government's handling of the contraband), *cert. denied,* 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978). *United States v. Ortiz*, 966 F.2d 707, 716 (C.A.1 (Puerto Rico), 1992).

Chain of custody arguments usually go to the weight of the evidence and not admissibility. *United States v. Ortiz,* 966 F.2d 707, 716 (1st Cir.1992), *cert. denied,* 506 U.S. 1063, 113 S.Ct. 1005, 122 L.Ed.2d 154 (1993); *United States v. Luna,* 585 F.2d 1, 6 (1st Cir.), *cert. denied,* 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978). Review is for abuse of discretion. *Ortiz,*

966 F.2d at 716. *United States v. Cartagena-Carrasquillo*, 70 F.3d 706, 715 (C.A.1 (Puerto Rico),1995).

Indeed, many circuits have held that challenges to the chain of custody go to the weight of the evidence and not whether the evidence should be suppressed. *See, e.g., United States v. Scharon,* 187 F.3d 17, 22 (1st Cir.1999) (finding chain of custody arguments usually goes to weight of evidence, not admissibility); *United States v. Sparks,* 2 F.3d 574, 582 (5th Cir.), *cert denied,* 510 U.S. 1080, 114 S.Ct. 899, 127 L.Ed.2d 91 (1993) (same); *United States v. Allen,* 106 F.3d 695, 700 (6th Cir.), *cert denied,* 520 U.S. 1281, 117 S.Ct. 2467, 138 L.Ed.2d 223 (1997) (finding merely raising possibility that someone tampered with evidence insufficient to render it inadmissible where government showed there was no reasonable probability marijuana was altered); *United States v. Brown,* 136 F.3d 1176, 1182 (7th Cir.1998) (finding where there is no evidence of tampering, presumption that evidence in official custody remained unaltered is not rebutted by a break in chain of custody); *United States v. Matta-Ballesteros,* 71 F.3d 754, 769 (9th Cir.1995), *cert denied,* 519 U.S. 1118, 117 S.Ct. 965, 136 L.Ed.2d 850 (1997) (finding defects in chain of custody did not dismantle government's showing that tapes were unaltered); *United States v. Humphrey,* 208 F.3d 1190, 1205 (10th Cir.2000) (finding defects in chain of custody go to weight of evidence and not its admissibility).

*United States v. Frazier*, 2000 WL 34030864, 7 (N.D.Iowa) (N.D.Iowa,2000).

The prosecution does not need to prove a perfect chain of custody for evidence to be admitted at trial. *United States v. Lott*, 854 F.2d 244, 250 (7th Cir.1988). Gaps in the chain of custody normally go to the weight of the evidence, rather than its admissibility. *Id.* Law enforcement officials only need to show that they took "reasonable precautions" to preserve the original condition of the evidence, but they do not have to exclude all possibilities of tampering with the evidence. *Lott*, 854 F.2d at 250. A "presumption of regularity" exists with respect to the official acts of public officers, and absent evidence to the contrary, the court presumes that the official duties were discharged properly. *Id.*

## VI. TRANSCRIPTS OF RECORDED CONVERSATIONS

None.

## VII. ANTICIPATED TRIAL DAYS

The United States anticipates that it will require two or three trial days to present its case.

Respectfully submitted,
UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ GERARD B. SULLIVAN
GERARD B. SULLIVAN
Assistant U. S. Attorney
RI Bar 3134
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
Email gerard.sullivan@usdoj.gov

CERTIFICATION

On May 2, 2008, I caused the within "Government's Trial Memorandum" to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

John Ruginski, Esquire
129 Dorrance Street
Providence, RI 02903

/s/ GERARD B. SULLIVAN
GERARD B. SULLIVAN
Assistant U. S. Attorney
RI Bar 3134
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
Email gerard.sullivan@usdoj.gov